Earl HOLLAND, Appellant,

v.

STATE of Missouri, Respondent.

No. 74412.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 9, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 6, 1999.

Application to Transfer Denied
June 1, 1999.

Murry A. Marks, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL J. SIMON, Presiding Judge.

Earl Holland (defendant) appeals the denial of his Rule 24.035 motion without an evidentiary hearing. On appeal, defendant contends that the motion court erred in denying his motion because (1) the trial court, in accepting his plea of guilty, failed to inform him of the applicable mandatory minimum penalty and provided a mistaken and misleading statement regarding the minimum amount of time that he would serve under the trial court's sentence, thereby violating Rule 24.02(b) and rendering his plea involuntary under the Fifth and Fourteenth Amendments of the United States Constitution; and (2) his attorney, in representing defendant, failed to inform defendant of the applicable mandatory minimum penalty or provided a mistaken and misleading statement regarding the minimum amount of time that defendant would serve under the trial court's sentence and failed to investigate two alibi witnesses identified by defendant, thereby providing ineffective assistance and rendering defendant's plea involuntary under the Fifth and Fourteenth Amendments to the United States Constitution. We affirm.

Review of a post-conviction motion is limited to a determination of whether the motion court clearly erred. Rule 24.035(k); *Wilhite v. State*, 845 S.W.2d 592, 594 (Mo.App. E.D.1992). The motion court's actions are deemed clearly erroneous only if a full review of the record leaves the appellate court with a definite and firm impression that a mistake has been made. *Id.*

We confine our recital of the facts to those essential to the points on appeal. On March 28, 1996, the State filed an indictment charging defendant with the unclassified felonies of armed criminal action, attempted forcible rape, forcible sodomy, and attempted forcible sodomy, the class B felonies of first degree burglary, first degree assault, and second degree robbery, and two counts of the class A misdemeanor of third degree assault. On May 5, 1997, the State filed an information charging defendant as a prior offender, bringing the number of counts against him to ten.

On May 14, 1997, defendant appeared before the trial court with his attorney, who previously had entered an appearance on behalf of defendant on February 26, 1996 and represented defendant throughout proceedings. The State announced that it wished to dismiss five counts against defendant, including the charges of attempted forcible sodomy, second degree

robbery, third degree assault, and being a prior offender. Defendant's attorney then announced that, following "plea negotiations with the State," defendant authorized him to withdraw a prior plea of not guilty and enter a plea of guilty to the remaining five counts.

The trial court then began to question defendant concerning the voluntariness of his plea. The questioning included the following discussion:

THE COURT: You understand that you are charged with two Class B felonies and three unclassified felonies?

THE DEFENDANT: Yes.

THE COURT: And that the range of punishment on a Class B felony in Missouri is up to fifteen years in the penitentiary?

THE DEFENDANT: Yes.

THE COURT: And with respect to the unclassified felonies that you could receive life sentences on each of those three offenses?

THE DEFENDANT: Yes.

THE COURT: And so that the maximum sentence that could be imposed under the law would be three consecutive life sentences together with thirty years also consecutive?

THE DEFENDANT: Yeah.

THE COURT: You've discussed the range of punishment with [your attorney]?

THE DEFENDANT: Yes.

THE COURT: He has confirmed what I have said to you now; is that correct?

THE DEFENDANT: Yes.

* * *

THE COURT: Are you admitting you have committed these five offenses?

THE DEFENDANT: Yes.

THE COURT: Sir, has anybody threatened you or forced you or in any way caused you to plead guilty against your will?

THE DEFENDANT: No, sir.

THE COURT: You understand that the State is recommending a sentence of ten years on each of the first three counts concurrent with one another and ten years on each of the next two counts concurrent with one another but consecutive to the first three counts? Is that your understanding?

THE DEFENDANT: Yes, sir.

THE COURT: So you understand that the total sentence in this case will be twenty years?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody made any other promises to you concerning the amount of time you might have to serve or the possibilities of probation?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that some of these offenses may require you to serve 85 percent of the time that you are being sentenced to serve?

THE DEFENDANT: Yes, sir.

THE COURT: You've discussed that with [your attorney]?

THE DEFENDANT: Yes, sir.

THE COURT: Now, are you pleading guilty to each of these five charges voluntarily?

THE DEFENDANT: Yes.

THE COURT: Are you doing it of your own free will?

THE DEFENDANT: Yes.

THE COURT: Are you doing it because you're guilty?

THE DEFENDANT: Yes.

THE COURT: Is there any reason for your pleas here today other than the fact of your guilt?

THE DEFENDANT: No, sir.

* * *

Additionally, the trial court questioned defendant concerning the effectiveness of counsel. The questioning included the following discussion:

THE COURT: Do you think that [your attorney] is a good lawyer?

THE DEFENDANT: Yes.

THE COURT: Think he knows what he's doing?

THE DEFENDANT: Yes.

THE COURT: Do you think he's concerned about you as a client?

THE DEFENDANT: Yes.

THE COURT: In representing you, did he do everything you asked him to do?

THE DEFENDANT: Yes, sir.

THE COURT: Was there anything he did that you didn't approve of?

THE DEFENDANT: No, sir.

THE COURT: Are you entirely satisfied with the way in which you have been represented?

THE DEFENDANT: Yes.

\* \* \*

THE COURT: And he has talked to you about your case?

THE DEFENDANT: Yes.

THE COURT: You've told him all the facts as you know them?

THE DEFENDANT: Yes.

THE COURT: He has reviewed the police reports with you?

THE DEFENDANT: Yes.

THE COURT: You know that he has told you he sat in on the trial of Thomas Cunningham?

THE DEFENDANT: Yes.

THE COURT: He told you what he observed during the course of that trial; is that correct?

THE DEFENDANT: Yes.

THE COURT: Do you think that both you and [your attorney] are fully informed about your case?

THE DEFENDANT: Yes.

THE COURT: Do you think you had enough time to talk to him?

THE DEFENDANT: Yes.

THE COURT: And he's advised you as have the members of your family?

THE DEFENDANT: Yes.

THE COURT: And you've taken their advice into consideration in deciding what you wanted to do?

THE DEFENDANT: Yes.

THE COURT: Do you think [your attorney] is a good lawyer?

THE DEFENDANT: Yes.

THE COURT: Think he knows what he's doing?

THE DEFENDANT: Yes.

THE COURT: Do you think he's concerned about you as a client?

THE DEFENDANT: Yes.

THE COURT: In representing you, did he do the things you asked him to do?

THE DEFENDANT: Yes.

THE COURT: Was there anything he did that you didn't approve of?

THE DEFENDANT: No.

THE COURT: Are you entirely satisfied with the way in which you have been represented?

THE DEFENDANT: Yes.

\* \* \*

The trial court sentenced defendant to three concurrent terms of ten years' imprisonment for armed criminal action, first degree burglary, and first degree assault, and a consecutive term of ten years' imprisonment consisting of two concurrent terms of ten years' imprisonment for attempted forcible rape and forcible sodomy.

Defendant filed a *pro se* Rule 24.035 motion on August 13, 1997. He acquired counsel and filed an amended Rule 24.035 motion on January 5, 1998 after successfully requesting additional time to file. In his motion, defendant argued, *inter alia,* that his pleas "were involuntary, unknowing and unintelligent" in that (1) the trial court and counsel "failed to assure that the pleas were voluntary as required by Rule 24.02 where [defendant] was not fully ad-

vised of the minimum term requirement during the plea proceedings in violation of [defendant's] due process rights as guaranteed by the Missouri and United States Constitutions and Supreme Court Rule 24.02"; and (2) counsel "had refused to prepare a defense for [defendant] or interview [defendant's] alibi witnesses." Defendant requested an evidentiary hearing at which he would present his own testimony and the pertinent transcript and legal file.

The State filed a motion to dismiss defendant's motion without an evidentiary hearing. In its motion, the State argued, *inter alia,* that (1) the transcript reveals that defendant entered his pleas knowingly, voluntarily, and intelligently; (2) on various occasions, the trial court informed defendant of the "class of felonies charged and the range of punishment should the cause proceed to trial"; (3) defendant failed to allege facts showing that actions or inaction of his attorney rendered his pleas involuntary; (4) defendant's argument regarding his attorney's alleged failure to investigate failed to mention what evidence his attorney could have discovered; and (5) the transcript refutes defendant's argument that his attorney failed to discuss the applicable range of punishment, including the applicable mandatory minimum penalty.

On January 16, 1998, the motion court denied defendant's request for an evidentiary hearing, took his Rule 24.035 motion under submission, and granted the parties fifteen days to file proposed findings of fact, conclusions of law, and orders. On January 30, 1998, the motion court issued its judgment denying defendant's Rule 24.035 motion. The motion court found, *inter alia,* that (1) defendant "understood the range of punishment for all charges," indicated to the trial court "that he was aware of the charges against him and discussed them with both his attorney as well as his family and fully understood every charge made against him," stated that he received no threats or promises "in order

to get him to plead guilty," said that he understood the plea bargain and the State's recommended sentence, and "admitted that he was in fact guilty of all crimes charged"; (2) defendant "is no novice to the criminal justice system and the record refutes his claim as to his expectation of a sentence"; (3) defendant "received what he bargained for, a sentence of twenty (20) years"; (4) defendant stated that he decided to plead guilty "of his own free will" and said that "the only reason he was pleading guilty was because he was in fact guilty"; (5) in his motion, defendant provided no information concerning alibi witnesses "other than the names ... and the unsupported claim that the witnesses would provide an alibi"; and (6) "there is no reasonable probability that the plea was anything less than knowingly, voluntarily and intelligently made due to the overwhelming evidence presented in the transcript."

The motion court then concluded that (1) defendant "failed to establish by a preponderance of the evidence that he is entitled to any relief requested in his motions"; (2) defendant "failed to show that his attorney lacked the care and skill of a reasonably competent attorney rendering similar services under the existing circumstances and conditions of the plea"; (3) defendant's attorney provided effective assistance; (4) defendant "was not denied any rights under the provisions of the Missouri Constitution or the Constitution of the United States"; (5) defendant failed to establish a legal basis for the granting of his motion; and (6) "the record speaks for itself and totally refutes the allegations of [defendant]," thereby obviating a need for an evidentiary hearing.

■ In his first point on appeal, defendant argues that the motion court erred in denying his motion because the trial court, in accepting his plea of guilty, failed to inform him of the applicable mandatory minimum penalty and provided a mistaken and misleading statement regarding the minimum amount of time that he would

serve under the trial court's sentence, thereby violating Rule 24.02(b) and rendering his plea involuntary under the Fifth and Fourteenth Amendments of the United States Constitution.

Rule 24.02(b), in pertinent part, provides as follows:

Except as provided by Rule 31.03 [concerning pleas of guilty entered in a misdemeanor case in the defendant's absence], before accepting a plea of guilty, the court must address the defendant personally in open court, and inform him of, and determine that he understands, the following:

1. The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law[.]

\* \* \*

Rule 24.02 requires the trial court to advise the defendant of the "direct consequences" of his plea, which consequences definitely, immediately, and largely automatically follow the entry of his guilty plea. *Steinle v. State*, 861 S.W.2d 141, 143 (Mo.App. W.D.1993). Among the purposes of Rule 24.02 is the intention that the court be convinced that "the defendant understands the specific charges and the maximum penalty confronting him" and "recognizes that by pleading guilty, he waives a number of legal rights." Nevertheless, the requirements and procedures articulated in Rule 24.02 do not constitute an unalterable script that a court must follow before accepting a defendant's guilty plea. Although the wisest course for the court accepting a defendant's guilty plea may be to meticulously follow in detail the specific items enumerated by Rule 24.02, the failure to methodically trace in succession each of the items pronounced by the rule does not necessarily constitute prejudicial error. *Id.*

For example, the failure of the trial court to advise the defendant of the range of punishment prior to accepting his guilty plea does not prejudice the plea when the sentence imposed was agreed upon in advance. *Id.* Defendant must show that the trial court's failure to follow Rule 24.02(b) rendered the negotiated pleas involuntary. *Estes v. State*, 950 S.W.2d 539, 543 (Mo. App. E.D.1997). That the State recommended a sentence which the defendant accepted in a plea bargain supports a finding that such a failure did not render the negotiated pleas involuntary. *Id.*

Here, the transcript from the hearing of May 14, 1997 establishes the following facts: (1) the trial court told defendant that "the range of punishment on a Class B felony in Missouri is up to fifteen years in the penitentiary," that "with respect to the unclassified felonies [he] could receive life sentences on each," and that the maximum sentence applicable to him following his conviction on all five counts "would be three consecutive life sentences together with thirty years also consecutive"; (2) defendant "discussed the range of punishment with [his attorney]," who confirmed what the trial court told defendant concerning the range of punishment; (3) defendant knew "the charges against [him]" and understood that the State had charged him with two Class B felonies and three unclassified felonies; (4) defendant discussed his case "in detail" with his attorney and talked to his "folks" regarding his case and his decision to plead guilty; (5) defendant stated that he "made [his] own decision" and that no one "threatened [him] or forced [him] or in any way caused [him] to plead guilty against [his] will"; (6) defendant said that he understood the State's recommended sentence, understood "that the total sentence in this case will be twenty years," and understood "that some of these offenses may require [him] to serve 85 percent of the time that [he was] being sentenced to serve"; (7) defendant received the sentence that the State recommended; and (8) defendant stated that he pled guilty "voluntarily," "of [his] own free will," "because [he was] guilty," and

for no reason "other than the fact of [his] guilt."

In applying the rules stated in *Steinle* and *Estes* to the facts established by the transcript, we would find great difficulty in saying that defendant involuntarily pled guilty to the crimes with which the State charged him. We recall the motion court's finding that defendant "received what he bargained for." In any event, we do not find that the trial court in any way misled him, as he has suggested. In telling defendant that, with respect to some of his crimes, he "may" have to serve eighty-five percent of the imposed sentence, rather than telling him that he "shall" have to do so as stated in section 558.019.3 RSMo 1994 (all further references shall be to RSMo 1994 unless otherwise noted), the trial court did not mislead him, for pardon or commutation, though generally unlikely, would remain possible at any time before he serves eighty-five percent of his sentence.

Defendant cites our decision in *Bell v. State*, 967 S.W.2d 304 (Mo.App. E.D.1998), in support of his claim that the trial court violated Rule 24.02(b) by failing to inform him of the applicable mandatory minimum penalty, thereby rendering his plea involuntary. There, defendant Bell pled guilty to several crimes but the trial court did not recite the applicable range of punishment and asked no one present to recite it. Bell contended, *inter alia,* that the trial court's failure to inform him of the mandatory minimum and maximum sentences established by law rendered his plea involuntary. *Id.* at 304–05.

In considering Bell's contention, we stated that Rule 24.02(b) places a burden on the trial court to determine that a defendant understands the range of punishment for the offenses charged. Although Bell stated that his attorney discussed the range of punishment with him, the record did not indicate exactly what his attorney told him or what Bell understood to be the range. We reversed and remanded for an evidentiary hearing to determine whether

Bell knew the correct range of punishment for the charges in question at the time of his plea and whether he suffered prejudice due to any omission that occurred. *Id.* at 305.

Here, the record reveals more than did the record in *Bell*. First, defendant acknowledged not only that his attorney had discussed with him the range of punishment but also that his attorney had discussed with him the fact that he may have to serve "85 percent of the time that [he was] being sentenced to serve" for some of his offenses. Furthermore, defendant acknowledged that he "underst[oo]d" that fact. Moreover, as we have noted, the trial court detailed the maximum penalties applicable to defendant's crimes; he in turn acknowledged that he understood what the trial court told him. *Bell* and the cases upon which it relied involved situations in which the record (1) did not show that defendant understood the range of punishment; or (2) showed that the trial court failed to correct a misstatement of the range of punishment. *Bell* does not establish a *per se* rule mandating reversal when a trial court fails to meticulously follow in detail the specific items enumerated by Rule 24.02; rather, it emphasizes, as we do here, that (1) with respect to Rule 24.02(b), an examination of the record must reveal that defendant understood the range of punishment; and (2) with respect to all cases involving a plea of guilty, the overriding concern remains the question of the voluntariness of the plea. Here, the record reveals that defendant understood the range of punishment and offered his plea voluntarily. Point denied.

■ In his second and final point on appeal, defendant contends that the motion court erred in denying his motion because his attorney, in representing defendant, failed to inform defendant of the applicable mandatory minimum penalty or provided a mistaken and misleading statement regarding the minimum amount of time that defendant would serve under the trial court's sentence and failed to investigate two alibi witnesses identified by defendant,

thereby providing ineffective assistance and rendering defendant's plea involuntary under the Fifth and Fourteenth Amendments to the United States Constitution.

We initially address defendant's claim that his attorney failed to inform him of the applicable mandatory minimum penalty or provided a mistaken and misleading statement regarding the minimum amount of time that he would serve under the trial court's sentence. Defendant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Wilhite*, 845 S.W.2d at 594. Furthermore, to prevail on a claim of ineffective assistance of counsel, defendant must show that counsel failed to provide reasonably effective assistance and that defendant was prejudiced thereby. Absent a showing to the contrary, counsel is presumed to have provided effective assistance. Where a guilty plea has been entered, the issue of effectiveness of counsel is material only to the extent it affects whether the plea has been voluntarily and knowingly made. To be successful in a claim of ineffective assistance of counsel after a guilty plea, the defendant must show that counsel made errors so serious that his representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In other words, to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 594–95.

In our disposition of point one we stated the facts which the transcript establishes and will not repeat all of them here. Nevertheless, we highlight that defendant discussed his case "in detail" with his attorney and "discussed the range of punishment with [his attorney]," who confirmed what the trial court told defendant concerning the range of punishment. The record does not indicate that defendant's attorney misled defendant in any way. Furthermore, the transcript shows that defendant answered a series of questions, several of which the trial court asked twice, in a way that casts doubt on his claim that his attorney provided ineffective assistance. As we stated in *Estes*, 950 S.W.2d at 542, a defendant who repeatedly assures the court that he is satisfied with his counsel's performance and that his counsel has done everything that he requested, is later barred from obtaining post-conviction relief based on a claim of ineffective assistance of counsel. Therefore, we reject defendant's claim that his attorney failed to inform him or misled him about his sentencing.

Next, we address defendant's claim that his attorney failed to investigate two alibi witnesses identified by defendant. As we stated in *Wilhite*, 845 S.W.2d at 595, a guilty plea generally waives any complaint defendant might have about trial counsel's failure to investigate his case. Furthermore, defendant must show what the testimony of the alleged witnesses would have been and how it would have helped him. *Id.* at 595–96. Here, as the motion court found, defendant in his motion provided no information concerning alibi witnesses "other than the names … and the unsupported claim that the witnesses would provide an alibi." Additionally, as we previously stated, defendant repeatedly assured the trial court that he was satisfied with his counsel's performance and that his counsel had done everything that he requested. As a result, defendant is now barred from obtaining post-conviction relief based on a claim of ineffective assistance of counsel. *Estes*, 950 S.W.2d at 542; *Wilhite*, 845 S.W.2d at 595–96. Point denied.

Judgment affirmed.

KATHIANNE KNAUP CRANE and LAWRENCE E. MOONEY, JJ., concur.